UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,

17-cr-789 (PKC)

19-CV-11557 (PKC)

-against-

ORDER

JOHN BROWN,

Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.:

Defendant John Brown moves *pro se* for a sentence reduction pursuant to 18 U.S.C.

§ 3582(c)(1)(A) asserting "extraordinary and compelling reasons" related to the ongoing COVID-

19 pandemic.[1] Brown is serving a sentence of principally 72 months' imprisonment following his

plea of guilty to four counts of Hobbs Act robbery in violation 18 U.S.C. § 1951. (Doc 70). He

is currently incarcerated at FCI Cumberland in Cumberland, Maryland.

Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant

after the defendant has fully exhausted all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court

may reduce such defendant's sentence if it finds that "extraordinary and compelling

circumstances warrant such a reduction." 18 U.S.C.§ 3582(c)(1)(A)(i).[2] The Court is

---

[1] Brown submitted two requests raising similar grounds for a sentence reduction. (See Docs 89 and 92). The Court is also in receipt of Brown's letter of November 4, 2020, which attached a written correspondence from the Warden of FCI Cumberland to Brown. (Doc 90). The government has responded to Brown's application (Doc 93), and Brown has replied to the government's submission. (Doc 96).

[2] Section 3582(c)(1)(A) also requires consideration of whether a sentence reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." But the Second Circuit has "held that United States Sentencing Guideline § 1B1.13—the policy statement 'applicable' to compassionate-release motions brought by the Director of the Bureau of Prisons—is not 'applicable' to compassionate-release motions brought by

Mailed to J. Brown 2/11/2021

permitted "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). The Court must also consider the "factors set forth in section 3553(a) to the extent they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act provides a 30-day window for the Bureau of Prisons ("BOP") to act and, only if a prisoner has exhausted his BOP administrative remedies or the 30-day period has expired, may a prisoner make an application to the Court. United States v. Woodson, 18-cr-845 (PKC), 2020 WL 1673253, at *1 (S.D.N.Y. Apr. 6, 2020). The government argues that Brown has not satisfied the First Step's exhaustion requirement. The government further represents that it conferred with BOP counsel, who confirmed that Brown did not submit a request for compassionate release. (Doc 93, at 6). However, it fails to address Brown's November 4, 2020 letter, which was submitted prior to the government's opposition, and attached a written response from the Warden of FCI Cumberland rejecting Brown's application for a "Compassionate Release/Reduction in Sentence." The letter, dated April 30, 2020, notes that the BOP received Brown's request on April 20, 2020. (Doc 90, at 3). Brown's reply to the government's opposition reattaches the Warden's April 30, 2020 letter. (Doc 96, Ex. B). The Court concludes that Brown has satisfied the exhaustion requirement under the First Step Act and will now turn to the merits of his application.

Brown states that he suffers from pre-existing medical conditions including diabetes, heart disease, high blood pressure, cholesterol, mental health disabilities and other physical ailments. (Doc 89). Brown is 54 years old. The Presentence Report ("PSR") prepared by the Department of Probation noted that he was diabetic, had a history of mental

---

incarcerated defendants." United States v. Roney, 2020 WL 6387844, at *3 n.1 (2d Cir. Nov. 2, 2020) (citing United States v. Brooker, 976 F.3d 228, 235–36 (2d Cir. 2020)).

- 2 -

health issues and had experienced shoulder and back pain. (PSR ¶¶ 93, 96–100). Brown's BOP medical records show he suffers from Type 2 diabetes and hypertension. (Doc 93 Ex. B, at 29–30). A recent medical evaluation on November 1, 2020 noted that Brown is an "insulin dependent diabetic" and that his diabetes was managed with daily insulin injections. (Id. at 789). The evaluation further identified that Brown has a history of hypertension and measured his blood pressure at 128/81. (Id.) An $SAO_2$ test measuring oxygen saturation levels was administered without remarkable results. The government points to some of Brown's medical records that show he refused insulin to argue that "Brown's stated concern for his health and wellbeing in the Motion also appears at odds with his actual interactions with the medical professionals at FCI Cumberland." (Doc. 93, at 10). The record on this motion at least supports Brown's assertion that he is subjectively concerned for his well-being due to the COVID-19 virus. According to the Center for Disease Control ("CDC"), "[a]dults of any age" with Type 2 diabetes are at an "increased risk of severe illness from the virus that causes COVID-19."[3] CDC guidance also counsels that individuals with hypertension might be at an increased risk of severe illness from COVID-19.[4] The Court concludes that Brown, at age 54, faces elevated risks if he were to be infected by the COVID-19 virus.

The government asserts that Brown would face similar risks from COVID-19 if he were to be released, and the Court recognizes that individuals with pre-conditions are at a heightened risk of serious consequences from the virus, if infected, whether they are at liberty or imprisoned. (Doc 93, at 10). A person who is at liberty, however, has an arguably greater ability to avoid infection because of his freedom to quarantine, social distance or utilize personal

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 10, 2021).
[4] Id.

protective equipment as he chooses, options that are not always available to a person who is incarcerated. The Court also acknowledges that a person at liberty has the freedom to select a medical provider of his choosing in the event he contracts the virus and this, again, an incarcerated person does not have the same option.

Brown is currently incarcerated at Cumberland FCI, and the parties dispute the prevalence of COVID-19 at the facility. The government states that at the time of its opposition on December 18, 2020 there were 37 confirmed cases among inmates and 10 among staff, while 208 inmates had recovered from the virus without a death at the facility. Brown responds that in early December the facility had to take emergency measures due to a rise in cases. His reply attaches a record purportedly confirmed by FCI Cumberland's medical department stating there were 240 confirmed cases between November 25, 2020 and January 4, 2021. (Doc 96, Ex. A). The BOP website provides up-to-date figures. As of February 3, 2021, it states that FCI Cumberland has 12 confirmed active cases among inmates and 10 cases among staff.[5] Over the course of the pandemic, there have been 390 confirmed cases of COVID-19 among inmates; there are 1,132 inmates at FCI Cumberland at this time.[6]

In Brown's case, application of the relevant section 3553(a) factors counsel against a grant of sentence reduction. On February 15, 2019, Brown pled guilty to four counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951. (Doc 58). As detailed in the factual findings of the PSR, which the Court adopted at sentencing, Brown committed a series of four robberies at commercial establishments in Manhattan, New York during the summer and fall of 2017 while brandishing a firearm. (Doc 72, Sentencing Tr at 30; PSR ¶¶ 12-16). During each of the robberies, an employee of those establishments opened the cash register, fearing for his or

---

[5] See https://www.bop.gov/coronavirus/ (last accessed Feb. 10, 2021).
[6] See https://www.bop.gov/locations/institutions/cum/ (last accessed Feb. 10, 2021)

- 4 -

her life. (Id.). In addition, around this same time period Brown engaged in two robberies on the street with one individual being robbed at gunpoint and a second being pistol-whipped and robbed. (Id. at ¶¶ 17–18).

Brown's advisory guidelines range was 70 to 87 months of imprisonment. (Sentencing Tr. at 13). The Court sentenced Brown to a term on the bottom end of the guidelines of 72 months' imprisonment. (Id. at 33). At sentencing, the Court noted that Brown's substance abuse and history of mental illness contributed to his criminal behavior but stated that it was not the "case here of a person who would never consider robbing another human being but for the fact that this doctor gave him Percocet for shoulder pain. The criminal history of this defendant indicates otherwise." (Id. at 29). The Court noted that Brown had a history of robberies and violent behavior, including a conviction for robbery in the second degree for which he received a 14-year sentence, and further observed that Brown's current offenses were committed at an advanced age when he was 51. (Id. at 29–33). BOP disciplinary records show that since Brown has been incarcerated, he has two disciplinary violations for fighting other inmates. (Doc 96, Ex. A). Brown responds that no violations have occurred since his sentencing on May 31, 2019. Brown's record of behavior while incarcerated does not warrant an additional sentence reduction beyond the approximately 11-month reduction he should receive in the form of good time credit.

Brown has been detained since the date of arrest on November 29, 2017. (PSR at 2). He has served approximately 38 months or 53% of his 72-month sentence. According to the BOP's website, Brown's projected release date is January 9, 2023. Accounting for good time credit, reducing Brown's sentence to time served would have the effect of lowering his sentence by 23 months.

Brown is 54 years old but he committed four gunpoint robberies at age 51. Taking full account of Brown's health, the present conditions at FCI Cumberland, the time he has served in prison to date and the other section 3553(a) factors, Brown's motion will be denied. Brown has served approximately half of his six-year sentence, and even accounting for good time credit, he has served less than two-thirds of his sentence. The need to protect the public from further crimes of Brown remains a compelling consideration. The Court has also taken account of all of the other section 3553(a) factors, including the seriousness of the offense, the need for just punishment, and Brown's history and characteristics. Brown has Type 2 diabetes and hypertension, and the CDC recognizes these conditions to be associated with degrees of heightened risk if the individual is infected with COVID-19. The Court has considered Brown's health conditions and whether viewed in isolation or in combination with other relevant considerations, it does not constitute an extraordinary and compelling reason that warrants a reduction in his sentence.

CONCLUSION

Taking all considerations both in isolation and in combination, the Court concludes that Brown has not demonstrated an extraordinary and compelling reason to reduce his sentence. Brown's motion for a sentencing reduction under 18 U.S.C. § 3582(c)(1)(A)(i) is DENIED. The Clerk is directed to terminate the motions. (Docs 89 and 92).

SO ORDERED.

Dated: New York, New York
      February 11, 2021

P. Kevin Castel
United States District Judge

- 6 -